No. 26-1874

IN THE

# United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THE COMMONWEALTH OF VIRGINIA, *et al.*,

*Defendants-Appellants*.

**On Appeal from the United States District Court for the Eastern District of Virginia**

## MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL


JAY JONES
*Attorney General*

TRAVIS G. HILL
*Chief Deputy Attorney General*

GRETCHEN ELLEN NYGAARD
*Deputy Attorney General*

TILLMAN J. BRECKENRIDGE
*Solicitor General*

ETHAN P. FALLON
*Deputy Solicitor General*

TRISTON C. O'SAVIO
*Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us


August 14, 2026


*Counsel for Defendants-Appellants*

## TABLE OF CONTENTS

Table of Authorities ........ iii

Introduction ........ 1

Background ........ 5

A. The Mask/Identity Law. ........ 5

B. Procedural History. ........ 7

C. Related Litigation. ........ 9

Standard of Review ........ 10

Argument ........ 10

I. The Commonwealth is likely to succeed and, at minimum, presents a substantial case on the merits. ........ 10

A. The threshold question, whether Virginia's law is direct regulation or neutral rule of general application, is open and substantial. ........ 10

B. The Mask/Identity Law regulates the public-facing manner of an encounter, not the substance of federal enforcement. ........ 13

C. Federal law itself requires officer identification in defined circumstances. ........ 16

D. Treating federal silence on masking as a grant of immunity has no logical stopping point. ........ 17

E. The authorities on which the district court relied do not resolve the question against Virginia. ........ 18

II. The injunction irreparably harms the Commonwealth. ........ 20

III. A stay will not irreparably harm the United States. ........... 23

IV. The balance of equities and the public interest favor a stay............................................................................... 25

V. At a minimum, the Court should narrow the injunction................................................................... 27

Conclusion.................................................................................... 28

Certificate of Compliance .......................................................... 30

Certificate of Service ................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) .................................................................. 21

*Ayotte v. Planned Parenthood of N. New Eng.*,
546 U.S. 320 (2006) .................................................................. 28

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025) ........................................................ 19

*Geo Group, Inc. v. Inslee*,
151 F.4th 1107 (9th Cir. 2025) ..................................................... 19

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ............................................................. 10, 13

*Johnson v. Maryland*,
254 U.S. 51 (1920) ................................... 11, 13, 16, 17, 18, 19, 20

*Kelley v. Johnson*,
425 U.S. 238 (1976) .................................................................. 26

*Lewis v. Casey*,
518 U.S. 343 (1996) .................................................................. 28

*Maryland v. King*,
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ......................... 4, 21

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
434 U.S. 1345 (1977) (Rehnquist, J., in chambers) ........................... 21

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................... 10, 12, 25, 26

*Texas v. United States Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024) ................................................ 19, 20

*United States v. California*,
819 F. Supp. 3d 1109 (C.D. Cal. 2026) ........................................ 2, 9, 12

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) .................................................... 3, 9, 12

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010) ................................................................ 19

*United States v. City of Philadelphia*,
2026 WL 1906075 (E.D. Pa. July 2, 2026) ...................................... 9, 10

*United States v. New York*,
No. 1:26-cv-1360 (N.D.N.Y. Aug. 3, 2026) ........................... 9, 12, 17, 27

*United States v. Virginia*,
139 F.3d 984 (4th Cir. 1998) ................................................................ 18

*United States v. Washington*,
596 U.S. 832 (2022) .............................................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................. 26

**Statutes**

10 U.S.C. § 723 .................................................................................. 3, 16

28 U.S.C. § 1292(a)(1) ............................................................................... 8

Va. Code § 1-214 ....................................................................................... 5

Va. Code § 1-243 ..................................................................................... 28

Va. Code § 9.1-101 .................................................................................... 6

Va. Code § 18.2-422 ............................................................................. 7, 15

Va. Code § 19.2-83.6:2 ...................................................... 1, 5, 6, 13, 24, 27

**Regulations**

8 C.F.R. § 287.8(c)(2)(iii)(A) ........ 3, 17

**Rules**

Fed. R. App. P. 8(a)(2) ........ 9

Fed. R. Civ. P. 54(b) ........ 9

Local Rule 27(a) ........ 5

## INTRODUCTION

The district court enjoined Virginia's Mask/Identity Law covering all law enforcement officers because it concluded that applying the law to federal officers directly regulates the federal government and therefore violates intergovernmental immunity. But no controlling precedent compels that conclusion, and courts addressing comparable laws have been divided. The district court then allowed that disputed merits ruling to drive the rest of its stay analysis, treating Virginia's sovereign injury and public-safety interests as entitled to little or no weight.

The law, however, regulates a narrow subject: how a law-enforcement officer performing official duties presents his identity to the public. Section 19.2-83.6:2 (1) forbids officers from wearing a facial covering that conceals their identities while performing official duties, subject to certain exceptions, and (2) requires any officer to display his agency and either his name or a unique identifier, subject to exemptions for specified tactical, undercover, and protective assignments. And it provides that an officer who violates the section is not guilty of the resulting misdemeanor unless his employing law-enforcement agency has adopted a qualifying written policy. Va. Code § 19.2-83.6:2. The

facial-covering prohibition and identification requirement apply by their terms to state, local, and federal officers, and say nothing about whom an officer may stop or arrest, what force he may use, or how he is trained or deployed.

The district court held that applying that law to federal officers is a per se violation of intergovernmental immunity, reasoning that the federal government has left masking to officer discretion so that the statute adds a qualification the federal government has decided is unnecessary. That reasoning proves too much, as four points show.

*First*, the merits question is substantial and open. No court of appeals has held that a law enforcement facial-covering prohibition directly regulates the federal government. The Central District of California ruled that a closely comparable prohibition did not, concluding that it "does not directly regulate federal functions or target federal practices but rather generally applies to law enforcement officers in California." *United States v. California*, 819 F. Supp. 3d 1109, 1132 (C.D. Cal. 2026). That court enjoined the statute only on the ground it discriminated against federal officers—a ground unavailable against Virginia's law, which contains no comparable exemption for Virginia

officers. *Id.* at 1132–33. When the case reached the Ninth Circuit, the United States sought review of only a separate identification statute. *See United States v. California*, 173 F.4th 1060, 1066–68 (9th Cir. 2026). District courts in Virginia, New York, and Pennsylvania have reached the opposite conclusion on comparable masking-and-identification laws, but no court of appeals has decided the question.

*Second*, federal law does not treat officer identification as categorically unnecessary. Congress requires federal law-enforcement personnel supporting a federal response to a civil disturbance to visibly display a unique identifier and the name of the employing federal entity, subject to exceptions for personnel who are not ordinarily uniformed and personnel engaged in undercover operations. 10 U.S.C. § 723(a), (c). A federal regulation separately directs a designated immigration officer, at an arrest, to identify himself as an immigration officer authorized to make the arrest. 8 C.F.R. § 287.8(c)(2)(iii)(A). Those requirements are not co-extensive with Virginia's, and consistency with federal law would not by itself save a direct regulation. But they undercut any categorical version of the premise that the federal government has pronounced officer identification unnecessary.

*Third*, the district court's finding that Virginia suffers no irreparable harm inverts the analysis. Having found the law likely unconstitutional, the court reasoned that Virginia has no interest in enforcing it. But preventing a State from effectuating its duly enacted statutes is itself "a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Because the merits remain disputed on appeal, the court should not have treated its preliminary ruling as erasing that injury from the balance.

*Fourth*, the injunction sweeps past anything the United States' theory could justify. It bars enforcement of the entire section, both the masking prohibition and the identification requirement, against the covered federal officers, without the district court having identified which applications it found invalid and which it did not. Even if some applications raised a serious immunity question, that would call for tailored relief, not suspension of the statute in full.

The Court should stay the preliminary injunction pending appeal. At a minimum, it should stay the injunction insofar as it bars enforcement of the facial-covering prohibition, the provision no court of

appeals has held to be a direct regulation and the one the California district court held was not a direct regulation.[1]

## BACKGROUND

### A. The Mask/Identity Law.

The Governor signed Senate Bill 352, the Mask/Identity Law, on May 20, 2026, and it took effect on July 1, 2026. *See* Va. Code § 1-214. It added the section at issue, initially codified as § 19.2-83.6:1 and since re-numbered as § 19.2-83.6:2.[2]

Subsection B prohibits a "law-enforcement officer," while "engaged in the performance of his official duties," from wearing "a facial covering that conceals, obscures, or otherwise covers his face." Va. Code § 19.2-83.6:2(B). Subsection C exempts eight categories, including translucent shields and clear masks, medical masks, hazardous-environment and protective gear, motorcycle helmets, facial coverings used by SWAT and

---

[1] Pursuant to Local Rule 27(a), counsel for Defendants-Appellants informed counsel for the United States of the intended filing of this motion. The United States does not consent and intends to oppose the motion.

[2] A joint motion for leave for the district court to correct its order to reflect the re-numbering is pending. This motion refers to the section as § 19.2-83.6:2.

other specialized tactical units, and facial coverings used in undercover, drug, gang, or surveillance work. *Id.* § 19.2-83.6:2(C). Subsection D requires a covered officer to visibly display a badge or insignia bearing his "name or other individual identifier" together with his employing agency's name. *Id.* § 19.2-83.6:2(D). As amended, subsection D exempts officers assigned to SWAT or other specialized tactical units and officers assigned to undercover, drug, gang, executive protection, or surveillance units where protection of their identities is necessary. *Id.* Subsection E provides that an officer who violates the section is guilty of a Class 1 misdemeanor unless his employing "law-enforcement agency" has adopted a qualifying written facial-covering policy. *Id.* § 19.2-83.6:2(E).

The statute defines "law-enforcement officer" to include both Virginia's state and local officers, *see* Va. Code § 9.1-101, and "any full-time or part-time employee of a federal law-enforcement agency," Va. Code § 19.2-83.6:2(A). The prohibition and the identification requirement thus apply to state, local, and federal officers alike. Nothing in the statute regulates whom an officer may stop or arrest, what force he may use, or how he is trained or deployed.

The Mask/Identity Law is part of Virginia's broader and longstanding regulation of identity concealment in public. The same Act amended Virginia's general anti-mask statute, which makes it unlawful for any person over sixteen, with the intent to conceal his identity, to wear an identity-concealing mask in public, subject to enumerated exceptions. *See* Va. Code § 18.2-422. The Mask/Identity Law provides an exception to that generally applicable criminal statute.

**B. Procedural History.**

The United States filed this action on June 11, 2026, challenging the Mask/Identity Law, together with a separate statute not at issue here, as an unconstitutional regulation of the federal government. It waited until June 17, 2026, and moved for a preliminary injunction against application to federal officers engaged in enforcing the immigration laws, and the Commonwealth opposed. The federal government attached four declarations of government officials claiming myriad concerns with the Mask/Identity Law. Over the Commonwealth's objection, the district court gave the Commonwealth just three business days to develop contrary evidence and oppose the motion. After a June

29 hearing, the district court granted the injunction on June 30 and issued a memorandum opinion on July 2. ECF Nos. 30, 34.

The Defendants noticed an interlocutory appeal on July 6, *see* 28 U.S.C. § 1292(a)(1), and moved for a stay that same day. In denying a stay, the district court did more than adhere to its original ruling. It reasoned that the law's evident focus on federal immigration enforcement "puts an end to Virginia's other arguments," and concluded that because the federal government leaves mask wearing to officer discretion, Virginia's additional requirements are "impermissible regulation." ECF No. 76 at 6–8. The court then allowed that merits conclusion to control much of the remaining analysis. It found "no harm to Virginia's sovereignty" from enjoining a "rather clearly unconstitutional law"; acknowledged evidence of increased officer impersonation crimes but said the "appropriate entity" to weigh that risk against federal officer safety "is the United States, not Virginia"; and concluded that there is no public interest in enforcing the law. *Id.* at 10–11, 14. The court also rejected Virginia's concern about the compressed time to refute the federal government's declarations, reasoning that Virginia could have delayed implementation of its own law while the preliminary injunction briefing

proceeded—an obvious Hobson's choice of enjoining itself to avoid being enjoined by the court. *Id.* at 11–13. Finally, the court characterized Virginia's stay request as "actually a motion for reconsideration" and separately held that Virginia had not satisfied Rule 54(b)'s reconsideration criteria. *Id.* at 9–10. This motion follows under Federal Rule of Appellate Procedure 8(a)(2).

### C. Related Litigation.

Courts reviewing comparable masking-and-identification laws have divided. The Central District of California held that a closely comparable facial-covering prohibition was not a direct regulation, enjoining it instead for discriminating against federal officers by exempting similarly situated California state officers. *California*, 819 F. Supp. 3d at 1132–33. The Ninth Circuit, addressing only a separate identification statute, held that provision to be a direct regulation. *California*, 173 F.4th at 1066–68. District courts in New York and Pennsylvania have enjoined comparable laws on the direct-regulation theory. *See United States v. New York*, No. 1:26-cv-1360, slip op. at 28, 51 (N.D.N.Y. Aug. 3, 2026); *United States v. City of Philadelphia*, 2026

WL 1906075, at *9–11, *14 (E.D. Pa. July 2, 2026). No court of appeals has decided the facial-covering question.

## STANDARD OF REVIEW

In deciding whether to stay an order pending appeal, this Court weighs whether the applicant has made a strong showing of likely success, whether it will be irreparably injured absent a stay, whether a stay will substantially injure the other parties, and where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are most critical, and the last two merge when the government is the opposing party. *Nken*, 556 U.S. at 435. The legal questions bearing on likelihood of success are reviewed de novo.

## ARGUMENT

### I. The Commonwealth is likely to succeed and, at minimum, presents a substantial case on the merits.

#### A. The threshold question, whether Virginia's law is direct regulation or neutral rule of general application, is open and substantial.

The intergovernmental immunity doctrine forbids a State from doing two things. It may not "regulate[] the United States directly," and it may not "discriminate[] against the Federal Government or those with

whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022). The federal government pressed only the first theory in its motion, and the district court granted relief solely on the direct-regulation theory.

The line between a forbidden direct regulation and a permissible law of general application is both old and, in this setting, unsettled. In *Johnson v. Maryland*, the Supreme Court held that Maryland could not require a federal mail-truck driver to obtain a state license, because that requirement did "not merely touch the Government servants remotely by a general rule of conduct" but instead "lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the [federal] Government has pronounced sufficient." 254 U.S. 51, 57 (1920). At the same time, the Court rejected any "general immunity from state law" for federal employees and observed that "when the United States has not spoken," local law might "extend to general rules that might affect incidentally the mode of carrying out the employment," giving as an example a rule regulating "the mode of turning at the corners of streets." *Id.* at 56. The question in each case is in which category a law falls, and courts have disagreed over how to discern that.

Courts have divided over comparable laws. The Central District of California held that a closely comparable facial-covering prohibition was not a direct regulation because it "does not directly regulate federal functions or target federal practices but rather generally applies to law enforcement officers," even though it "may be a direct response to recent federal law enforcement practices." *California*, 819 F. Supp. 3d at 1132. It enjoined that prohibition only because California exempted its own peace officers, violating the anti-discrimination prong. *Id.* at 1132–33. Virginia's law contains no such exemption, and the federal government did not rely on discrimination in seeking preliminary relief. On appeal, the United States sought relief only against a separate identification statute, which is all the Ninth Circuit addressed. *California*, 173 F.4th at 1066–68. The Northern District of New York accordingly emphasized that the Ninth Circuit did not address "the law prohibiting officers from wearing facial coverings." *New York*, slip op. at 17 n.5.

The Commonwealth does not need to establish that reversal is certain. It makes the strong showing of likely success that *Nken* requires. And at minimum, it presents a "substantial case on the merits," which supports a stay where the remaining factors militate in the movant's

favor. *Hilton*, 481 U.S. at 778. The Commonwealth's sovereign and public-safety injuries and the remaining stay factors independently reinforce the case for interim relief.

### B. The Mask/Identity Law regulates the public-facing manner of an encounter, not the substance of federal enforcement.

On the merits, Virginia's law is not a direct regulation because it neither singles out the federal government nor reaches the substance of federal enforcement. It applies by its terms to every officer of every sovereign. Va. Code § 19.2-83.6:2(A). And it regulates a single subject, the concealment or display of an officer's identity during a public encounter, leaving untouched the matters at the heart of the federal function. An officer retains discretion over whom to stop or arrest, what force to use, the target and objective of the operation, and how personnel are deployed; the statute regulates only the masking and identification features specified in its text. That is the kind of neutral regulation of the manner of public conduct that *Johnson* contemplated when it distinguished a general rule of conduct from a requirement that lays hold of the officer in his attempt to obey orders. 254 U.S. at 56–57.

The district court gave two reasons for rejecting general applicability: the statute's express coverage of federal officers and the record's focus on federal immigration enforcement. ECF No. 76 at 5–8. Neither is sufficient. The stay opinion made that reasoning unusually categorical. It mischaracterized Virginia's law as one where "[o]nly federal law enforcement officers are actually affected" and said the law's focus on federal immigration enforcement "puts an end to Virginia's other arguments." ECF No. 76 at 6–7. But that observation is plainly false, and it does not answer the direct-regulation question. The fact that a state law applies to federal officers is the beginning of the intergovernmental-immunity inquiry, not its end, and legislative concern with federal conduct does not convert an evenhanded law into direct regulation.

The court first reasoned that, as a practical matter, only federal officers would be affected because the exceptions are framed in terms of a "law-enforcement agency" the statute defines as a Virginia agency. The statute's facial breadth is relevant, though not dispositive, to the direct-regulation inquiry. Its basic prohibition and identification mandate apply to covered state, local, and federal officers alike. The fact that

federal officers may presently bear much of the law's practical burden itself does not resolve the direct regulation question. The district court's erroneous finding that federal officers are the officers actually affected sounds in discrimination, a theory the United States did not press, and the California district court considered the same federal impetus yet still found the prohibition generally applicable.

The court next reasoned—borrowing from the Ninth Circuit's identification decision—that masked law enforcement is not conduct "any ordinary citizen could perform." That formulation is oddly specific given that intentional concealment of one's identity in public is conduct Virginia has long generally regulated. *See* Va. Code § 18.2-422. Ultimately, the court relied heavily on declarations claiming that officers had been doxxed and otherwise targeted for harassment by people lawfully protesting their behavior. But that is irrelevant insofar as it does not establish a federal policy or work requirement that Virginia's generally applicable mask law directly interferes with. And, as established in the evidence the Commonwealth could muster in the three business days it had (as compared with the 28 days the federal government had to compile short declarations from its own employees),

those assertions are pretextual. Indeed, the Commonwealth's expert explained that routine identity-concealing masks were *not* standard ICE practice before 2025, that the federal declarations did not establish a need for routine masking across ordinary public-facing operations, and that several asserted harms were generalized or predictive rather than evidence of physical attacks caused by officers appearing unmasked. ECF No. 22-1 ¶¶ 11, 27–29.

### C. Federal law itself requires officer identification in defined circumstances.

The law also undercuts the district court's rationale as to identification. The court held the statute invalid because it imposes "qualifications in addition to those that the [federal] Government has pronounced sufficient." ECF No. 34 at 26 (quoting *Johnson*, 254 U.S. at 57). But the federal government has not pronounced officer identification unnecessary. Congress requires federal law-enforcement personnel supporting a federal response to a civil disturbance to visibly display a unique identifier and the name of the employing federal entity, subject to exceptions for personnel who are not ordinarily uniformed and personnel engaged in undercover operations. 10 U.S.C. § 723(a), (c). And a federal regulation requires a designated immigration officer, at an

arrest and as soon as practical and safe, to identify himself as an immigration officer authorized to make the arrest. 8 C.F.R. § 287.8(c)(2)(iii)(A). Those obligations refute any categorical premise that identification duties like Virginia's are inherently incompatible with federal operational judgments. The district court in *New York* acknowledged the point, noting that although no federal law requires masking, "there exist federal laws and regulations which require visible identification in certain circumstances." *New York*, slip op. at 12.

### D. Treating federal silence on masking as a grant of immunity has no logical stopping point.

The district court's treatment of the masking prohibition rested on the proposition that, because the federal government leaves masking to officer discretion, Virginia impermissibly "adds . . . requirements to the discretion that the federal government has decided is necessary." ECF No. 76 at 8. That treats the absence of a federal rule as itself a federal command that officers remain free to act as they choose, immune from neutral state regulation of the manner of their public conduct. *Johnson* does not support that view. It rejected any general immunity from state law and left room for generally applicable rules that only incidentally affect the manner in which federal work is carried out when federal law

has not displaced them. 254 U.S. at 56. Virginia's position has a limiting principle the district court's does not. Virginia submits that the relevant line permits a neutral rule governing how covered officers present themselves to the public during public-facing law-enforcement activity, while forbidding state rules that dictate the substance of federal enforcement or single out federal officers. A rule that dictated the substance of federal enforcement, or singled out federal officers, would fall on the other side of the line.

### E. The authorities on which the district court relied do not resolve the question against Virginia.

The authorities the district court relied on do not support its ruling, given that they arose in materially different settings. This Court's decision in *United States v. Virginia* involved Virginia's attempt to apply its private-investigator licensing and registration requirements to independent contractors selected to conduct FBI background investigations. 139 F.3d 984, 986–88 (4th Cir. 1998). The Court held that those requirements impermissibly allowed Virginia to "second-guess" the FBI's responsibility determination. *Id.* at 989. That case regulated who could perform federal work through a state licensing regime, not the public-facing manner of an officer's conduct. *United*

*States v. City of Arcata* involved ordinances expressly prohibiting federal military recruiters from carrying out federal recruitment activity, a direct regulation of what federal agents could do. 629 F.3d 986, 991–92 (9th Cir. 2010). *CoreCivic* and the *Geo Group* cases concerned state regulation of federal detention contractors, whose protection from state law, as *Geo Group v. Inslee* explained, is "substantially narrower than that of a federal employee or other federal instrumentality." 151 F.4th 1107, 1116 (9th Cir. 2025); *see CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315 (3d Cir. 2025). And *Texas v. United States Dep't of Homeland Sec.* arose from a State's assertion of generally applicable property rights as proprietor. 123 F.4th 186, 205–06 (5th Cir. 2024).

Those authorities therefore do not all fit the same mold. The licensing and recruitment cases fall on *Johnson*'s direct-regulation side of the line because they imposed state qualifications on who could perform federal work or directly prohibited federal agents from carrying out federal activity; the contractor cases apply a distinct and narrower immunity framework; and *Texas* expressly reaffirmed *Johnson*'s distinction between impermissible control of federal duties and generally applicable rules that merely affect the mode in which those duties are

carried out. *See Texas*, 123 F.4th at 206–07. None squarely answers whether a generally applicable rule governing the public-facing appearance of law-enforcement officers is a direct regulation. The Ninth Circuit's identification decision addressed a different provision, and the contrary district court decisions in New York and Pennsylvania are not controlling.

Ultimately, this is a novel question of law where the Court must apply the base principle to the applicable law instead of analogizing to a far-flung case. When that happens, the requirement that all law enforcement officers not conceal their faces while performing official duties neither conditions who may perform federal work nor dictates the substance of federal enforcement and therefore falls on *Johnson*'s other side of the line: a "general rule[]" that at most "affect[s] incidentally the mode of carrying out the employment." 254 U.S. at 56.

## II. The injunction irreparably harms the Commonwealth.

The district court found that Virginia suffers no irreparable harm because a State has no legitimate interest in enforcing an unconstitutional law. That inverts the analysis, making the second factor turn entirely on the first, so that a movant could never show

irreparable harm without having already prevailed on the merits. The Supreme Court has recognized a distinct sovereign injury when a State is prevented from effectuating duly enacted laws while their validity remains under judicial review: "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *King*, 567 U.S. at 1303 (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see also Abbott v. Perez*, 585 U.S. 579, 602–03 (2018). The district court instead said there was "no harm to Virginia's sovereignty" because the law was "rather clearly unconstitutional." ECF No. 76 at 10. But that does not independently analyze irreparable harm. Because the merits remain disputed on appeal, the district court should not have treated its preliminary ruling as eliminating that sovereign injury from the balance. Every day the injunction remains in force, the Commonwealth cannot enforce a criminal statute enacted by its General Assembly and signed by its Governor to advance public-safety and law-enforcement accountability interests traditionally associated with state police power.

Moreover, every day the injunction is in force, there is more risk that the Commonwealth will not be able to effectively investigate other crimes by law enforcement officers. Indeed, a masked law enforcement officer may have criminally assaulted a Virginian just four days ago when an ICE agent pointed a firearm at her during an encounter in Falls Church.[3] The general mask law makes investigation of such incidents far more likely to bear fruit by making any alleged assailant more readily identifiable. The Mask/Identity Law here, lowering the criminal penalty of the general mask law, puts officers on notice that they must remain accountable to the Commonwealth's laws and it renders investigations by the Commonwealth into law enforcement misconduct far more likely to be successful in either supporting or debunking criminal allegations.

Thus, the injury here is not merely a matter of dignity. The record contains evidence that ad hoc masking combined with the absence of visible identification can create confusion, impede oversight, increase the risk of impersonation, and increase the risk that legitimate officers are

---

[3] *See* Drew Wilder, *Video Shows ICE Agent Pull Gun on Virginia Woman Who Yelled at Agents in Parking Lot*, NBC4 Washington (Aug. 11, 2026), *available at* https://tinyurl.com/5b29uat3.

mistaken for criminal actors. ECF No. 22-1 ¶¶ 11, 30–34, 40–42. Those are concrete public-safety concerns that arise at the moment of a law-enforcement encounter, and the ability to prosecute impersonation after the fact does not fully answer them.

The district court gave that evidence little weight and treated the federal government's pretextual assertions of officer endangerment as dispositive. The Commonwealth's expert explained, however, that those assertions did not identify a physical assault on an officer or family member, outside an enforcement operation, resulting from the officer's facial visibility during an earlier operation, and that several declarations described *anticipated* rather than realized harms. ECF No. 22-1 ¶¶ 27–29. The court thus substantially undervalued Virginia's documented public-safety and accountability interests while treating the federal government's generalized predictions of harm as sufficient to displace them.

## III. A stay will not irreparably harm the United States.

The United States' asserted injury does not justify the categorical injunction that issued. Its first asserted injury is the constitutional injury of being subjected to state regulation it contends is forbidden.

That asserted injury depends on the same disputed direct-regulation premise and therefore does not by itself answer how broadly interim relief should extend if the Court concludes that the masking and identification provisions warrant different treatment. Its second asserted injury is that requiring officers to unmask will expose them to identification, harassment, and violence. The Commonwealth takes that risk seriously, and the statute is built to account for it. An officer may display a unique identifier rather than his name. The masking exceptions cover tactical operations, physical hazards, and undercover and surveillance work, and the identification requirement now exempts tactical, undercover, and protective assignments.

Several of those protections apply to federal officers. Subsection C(7) applies to "any law-enforcement officer" assigned to a SWAT or specialized tactical team, and current subsection D exempts "[a]ny law-enforcement officer" engaged in the listed tactical and investigative assignments. Va. Code § 19.2-83.6:2(C)(7), (D). Subsection C(8)'s separate undercover, drug, gang, and surveillance exception, however, turns on a determination by a defined "law-enforcement agency," and the district court refused the Commonwealth's reading that included federal

agencies. ECF No. 34 at 3–4. Even on that reading, the statute's other safety-sensitive exceptions and current subsection D exemptions apply to federal officers and reduce the United States' asserted operational harms. Those carveouts materially bear on the scope and weight of the United States' asserted harms and support, at minimum, treating subsections B and D separately when tailoring interim relief.

The United States relied below on the Commonwealth's statement at argument that a proven Supremacy Clause violation would be irreparable injury. That statement assumed the very thing in dispute, that a violation has been established, and says nothing about the balance of harms if the violation has not been shown or the question is at least substantial. Whether a stay should issue is for this Court to decide under the *Nken* factors.

## IV. The balance of equities and the public interest favor a stay.

The final two factors merge where the Government is a party. *Nken*, 556 U.S. at 435. Both sovereigns share an interest in law enforcement that is safe, effective, and accountable, and the statute serves all three. The district court took a different approach. It reasoned that if federal mask-wearing harms the public interest, "the federal

government is the appropriate entity in our federal system to address that issue." ECF No. 76 at 14. That formulation effectively removes Virginia's public-safety judgment from the balance whenever federal officers are involved, rather than weighing the competing public consequences of interim relief under *Nken* and *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

*Kelley* confirms the traditional state interest in the appearance and public recognizability of a State's own law-enforcement personnel. *See Kelley v. Johnson*, 425 U.S. 238, 247–48 (1976). It does not itself resolve the separate intergovernmental-immunity question presented by application to federal officers, but it supports the Commonwealth's asserted public-safety and accountability interests. Suspending a duly enacted criminal law addressed to the accountability of armed officers does not serve the public interest, particularly where the law can be enforced consistent with legitimate federal operational needs. *Winter*, 555 U.S. at 24, requires a court to balance the competing claims of injury and to give particular regard to the public consequences of interim relief. Here, the Commonwealth's sovereign and public-safety interests, the unsettled masking question, and the statute's tailored exceptions, favor

preserving at least part of the law while the appeal proceeds. Even the court that most recently enjoined a comparable law recognized that the State there appeared "well-intentioned in its pursuit of transparent policing." *New York*, slip op. at 49.

## V. At a minimum, the Court should narrow the injunction.

If the Court determines not to stay the injunction in full, it should not leave in place an injunction of the present breadth. The injunction bars enforcement of § 19.2-83.6:2 against federal officers, employees, and agencies involved in enforcing federal immigration laws and regulations and therefore reaches both the facial-covering prohibition and the identification requirement. ECF No. 30 at 3. But those provisions present analytically distinct questions. No court of appeals has held that a law enforcement facial-covering prohibition directly regulates the federal government; the Central District of California held that a closely comparable prohibition did not; and the Ninth Circuit's appellate decision concerned only the identification requirement.

That provision-by-provision distinction is also the cleanest way to tailor interim relief. Courts ordinarily seek to limit equitable relief to the violation shown and to avoid invalidating more of a legislature's work

than necessary. *See Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–30 (2006); *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Virginia's severability statute similarly provides that an invalid provision or application does not affect other provisions or applications that can be given effect without it. Va. Code § 1-243. Staying the injunction as to subsection B would preserve the masking rule while leaving the identification injunction in place pending appeal if the Court concludes that subsection D presents the stronger intergovernmental-immunity concern.

## CONCLUSION

For the foregoing reasons, the Court should stay the preliminary injunction pending appeal. In the alternative, the Court should narrow the injunction as set out above.

Respectfully submitted,

COMMONWEALTH OF VIRGINIA and JAY JONES, in His Official Capacity as Attorney General for the Commonwealth of Virginia

/s/ *Ethan P. Fallon*
ETHAN P. FALLON
*Deputy Solicitor General*

JAY JONES
*Attorney General*

TRAVIS G. HILL
*Chief Deputy Attorney General*

GRETCHEN ELLEN NYGAARD
*Deputy Attorney General*

TILLMAN J. BRECKENRIDGE
*Solicitor General*

TRISTON C. O'SAVIO
*Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

August 14, 2026

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,176 words, excluding the parts of the motion exempted by Rule 32(f). This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) and Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ *Ethan P. Fallon*
ETHAN P. FALLON
*Deputy Solicitor General*

## CERTIFICATE OF SERVICE

I certify that on August 14, 2026, I electronically filed the foregoing motion with the Clerk of the Court using the appellate CM/ECF system, which will serve all parties or their counsel of record through the CM/ECF system.

/s/ *Ethan P. Fallon*
ETHAN P. FALLON
*Deputy Solicitor General*