No. 26-1874

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THE COMMONWEALTH OF VIRGINIA,
JAY JONES, in his official capacity as Attorney General of Virginia,
and STEVE DESCANO, in his official capacity as Commonwealth Attorney
for Fairfax, Virginia,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Virginia, Case No. 26-cv-00545
The Honorable Robert E. Payne

**BRIEF OF AMICUS CURIAE CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON IN SUPPORT OF DEFENDANTS-APPELLANTS**


Nikhel S. Sus
Lauren C. Bingham
**CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**
P.O. Box 14596
Washington, DC 20044
Phone: (202) 408-5565
nsus@citizensforethics.org
lbingham@citizensforethics.org

Burt M. Rublin
Counsel of Record
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Phone: (215) 864-8116
rublin@ballardspahr.com

*Attorneys for Amicus Curiae Citizens for Responsibility and Ethics in Washington*


#4917-5350-2399 v1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rules 26.1(a)(2)(A) and (a)(2)(C), Amicus Curiae Citizens for Responsibility and Ethics in Washington certifies that it has no parent corporations and no publicly held corporation has ten percent or more greater ownership in it.

Under Local Rule 26.1(a)(2)(B), Amicus Curiae certifies that it is unaware of any publicly held corporation or similarly situated legal entity that has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit sharing agreement, insurance, or indemnity agreement.

## STATEMENT OF COMPLIANCE WITH RULE 29

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, Amicus Curiae states that all parties have consented to the filing of this brief in support of the defendants-appellants. In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), Amicus Curiae states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except the Amicus Curiae and its counsel contributed money to fund the preparation or submission of this brief.

## TABLE OF CONTENTS

Page

Table of Authorities ........ ii

I. STATEMENT OF INTEREST OF AMICUS CURIAE ........ 1

II. INTRODUCTION ........ 1

III. ARGUMENT ........ 3

A. Prohibiting Masks and Requiring Identification Promote Transparency ........ 3

B. Prohibiting Masks and Requiring Identification Promote The Safety of Officers and the Public and Enhance Accountability ........ 6

C. Masking and Identity Concealment Create Intimidation and Fear In The Community and Chill the Exercise of First Amendment Rights ........ 12

D. Masking and Identification Concealment By ICE Agents Have Facilitated Crimes by ICE Impersonators ........ 16

IV. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aja v. City of Riverside*,
2025 U.S. Dist. LEXIS 157015 (C.D. Cal. Aug. 11, 2025) .............................................15, 16

*American Association of University Professors v. Rubio*,
780 F.Supp.3d 350 (D. Mass. 2025) .........................................................................15

*American Association of University Professors v. Rubio*,
802 F.Supp.3d 120 (D. Mass. 2025) .........................................................12, 13, 15

*Anti Police-Terror Project v. City of Oakland*,
477 F.Supp.3d 1066 (N.D. Cal. 2020) .........................................................................16

*Black Lives Matter Seattle-King Cty. v. City of Seattle*, 466 F.Supp.3d 1206 (W.D. Wash. 2020) .........................................................................16

*Commission on Peace Officer Standards & Training v. Superior Court*,
42 Cal. 4th 278 (2007) .........................................................................3, 4, 5

*Doornbos v. City of Chicago*,
868 F.3d 572 (7th Cir. 2017) .........................................................................7

*M-J-M-A- v. Hermosillo*, 822 F.Supp.3d 1147 (D. Or. 2026) ...............................................14, 15

*Molina v. United States Dept of Homeland Sec.*,
811 F.Supp.3d 1 (D.D.C. 2025) .........................................................................13

*Urquilla-Ramos v. Trump*,
821 F.Supp.3d 603 (S.D.W.Va. 2026) ......................................................................... *passim*

### Statutes

10 U.S.C. § 723(a) .........................................................................8

Federal Tort Claims Act.........................................................................10

Va. Code § 19.2-83.6:2(B)(D) .........................................................................1

### Regulations

8 C.F.R. § 287.8(c)(2)(iii)(A) .........................................................................8

**Other Authorities**


Ali Bradley, "Exclusive: Acting ICE director defends agents' use of masks," News Nation, Oct. 16, 2025, https://www.newsnationnow.com/us-news/immigration/todd-lyons-defends-masked-agents/ ....................6

Allison Gordon, Rob Kuznia, Kyung Lah, CNN, "ICE impersonator incidents rise during Trump's second term," Nov. 20,2025, https://www.cnn.com/2025/10/02/us/ice-impersonator-incidents-rise-invs-vis ....................17

Allison McCann, "At Least 21 People Have Been Shot by Federal Immigration Agents Since Last Year," New York Times, July 10, 2026, https://www.nytimes.com/2026/07/08/us/immigration-agent-shootings-vehicles.html ....................6

Anagilmara Vílchez and Ronny Rojas, "Fake ICE agents terrorize immigrants amid Trump's crackdown," NBC News, May 25, 2026, https://www.nbcnews.com/news/us-news/ice-impersonators-immigrants-raids-violence-trump-administration-rcna265653 ....................17

FBI Public Safety Awareness Report, "Criminal Actors Impersonate ICE Agents to Commit Violent Crime," Oct. 17, 2025, https://s3.documentcloud.org/documents/26364028/20251016-fbi-alert-re-ice-impersonators.pdf ....................16, 17

Lisa Desjardins and Andrew Corkery, "Rise of ICE agents wearing masks creates opportunity for imposters to conduct crimes," PBS News Hour, July 27, 2025, https://www.pbs.org/newshour/show/rise-of-ice-agents-wearing-masks-creates-opportunity-for-imposters-to-conduct-crimes ....................17

Madeleine Ngo, Hamed Aleaziz, Zolan Kanno-Youngs, "ICE Ordered to Cease Most Vehicle Stops After 2 Killings in a Week," New York Times, July 14, 2026 https://www.nytimes.com/2026/07/14/us/ice-agents-traffic-stops.html ....................6

Press Release – "Real Officers Have Nothing to Hide: If in Doubt, Ask to Verify," https://www.usmarshals.gov/news/press-release/real-officers-have-nothing-hide-if-doubt-ask-verify#:~:text=ensure%20accountability%20and%20build%20safer,are%20currently%20operating%20in%20Memphis ....................18

Ray Sanchez and Alisha Ebrahimji, "Masked ICE Officers: The new calling card of the Trump Administration's immigration crackdown," CNN, June 21, 2025, https://www.cnn.com/us/ice-immigration-officers-face-masks ....................7

Zak Cheney-Rice, "No One Can Tell Who's a Cop Anymore. Masked criminals are impersonating ICE agents and police, preying on an already terrorized public," New York Magazine, July 28, 2025, https://nymag.com/intelligencer/article/trump-immigration-ice-agents-masks-criminal-imposters.html ....................17, 18

https://truthsocial.com/@realDonaldTrump/posts/114646378582957392 ....................9

https://truthsocial.com/@realDonaldTrump/posts/114651482271002772 ....................9

## I. STATEMENT OF INTEREST OF AMICUS CURIAE

Citizens for Responsibility and Ethics in Washington (CREW) is a 501(c)(3) nonprofit, nonpartisan government watchdog organization dedicated to promoting integrity, transparency, and accountability in government. For over 20 years, CREW has sought to protect the rights of citizens to be fully informed about the activities of government officials and to ensure that those officials act lawfully and ethically. All parties have consented to the filing of this brief.

## II. INTRODUCTION

CREW submits this brief as amicus curiae in support of the Virginia defendants-appellants. This brief focuses on the important and salutary public policies served by Virginia's law prohibiting law enforcement officers from wearing a facial covering while engaged in the performance of their official duties (the "Mask Law") and requiring them to visibly display a badge bearing their name or other individual identifier (*i.e.,* badge number) and law enforcement agency (the "Identification Law"). Va. Code § 19.2-83.6:2(B), (D).

Prohibiting law enforcement officers, including ICE agents, from wearing masks and requiring them to display an identification badge promotes the safety of both the officers and the public, and it increases public trust in those officers. It also creates greater transparency, accountability, and oversight. Being masked and unidentifiable increases the likelihood of officer misconduct and abuse.

Conversely, requiring officers to be unmasked and identifiable makes it possible to hold them to account in the event of misconduct and thus deters it from occurring. It also makes it less likely that criminals will continue to impersonate ICE agents by wearing masks in their commission of crimes, as has been done many times in the past year.

The use of masks and lack of identification adversely impacts the public as well as the officers. Secret police are a hallmark of repressive regimes, not free and open societies. Masked, anonymous law enforcement officers are very intimidating. Their appearance has a direct chilling impact on lawful protest and the exercise of First Amendment rights that the challenged law properly seeks to dispel.

It bears emphasis that there is no federal statute, regulation, or agency policy that requires federal law enforcement officers to wear facial coverings or to conceal their name or badge number while performing their normal duties. The absence of any such federal requirement, coupled with the historical tradition of law enforcement officers wearing identification badges and not masking their faces, belies the Federal Government's arguments that masking and identification concealment are essential to federal law enforcement operations and ensuring agents' safety.

## III. ARGUMENT

### A. Prohibiting Masks and Requiring Identification Promote Transparency

As correctly recognized by the Virginia Legislature, it is vitally important that law enforcement officers, whether they are federal, state, or local, be identifiable to the public. The California Supreme Court emphasized this common sense proposition in holding that the names of California law enforcement officers had to be disclosed to the press:

> *We find no well-established social norm that recognizes a need to protect the identity of all peace officers*. Peace officers operate in the public realm on a daily basis, and identify themselves to the members of the public with whom they deal. Indeed, uniformed peace officers are required to wear a badge or nameplate with the officer's name or identification number.

*Commission on Peace Officer Standards & Training v. Superior Court,* 42 Cal. 4th 278, 301 (2007) ("*POST*") (emphasis added).

The *POST* Court further underscored that "[t]he public's legitimate interest in the identity and activities of peace officers is even greater than its interest in those of the average public servant." *Id*. at 297. As it explained:

> 'Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws of the state. In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers' … *The abuse of a patrolman's office can have great potentiality for social harm*.

*Id*. at 297-98 (emphasis added).

Similarly, a federal court in West Virginia recently explained why it is vitally important that ICE agents and other law enforcement officers not be allowed to wear masks or avoid wearing badges with their names:

> Every public official who exercises coercive power assumes some personal exposure as the price of legitimate authority. Judges sentence. Prosecutors accuse. Officers seize. None is entitled to anonymity as a default condition of exercising state force. The officer who arrests a person stands in no different constitutional position than the judge who sentences him or the prosecutor who sought the conviction. All exercise delegated authority. All do so under their own names and in their own persons, because accountability is not a burden imposed on public officials as a matter of grace. It is the structural condition of their authority.

*Urquilla-Ramos v. Trump*, 821 F.Supp.3d 603, 628-29 (S.D.W.Va. 2026).

In *POST*, the California Supreme Court acknowledged that "[t]he safety of peace officers and their families is most certainly a legitimate concern," but it stressed that "[a] mere assertion of possible endangerment is insufficient to justify nondisclosure." 42 Cal. 4th at 302. It concluded as follows:

> *The public's interest in the qualifications and conduct of peace officers is substantial, a circumstance that both diminishes and counterbalances any expectation officers may have that their names and employment as peace officers will be confidential*. Peace officers 'hold one of the most powerful positions in our society; our dependence on them is high and the potential for abuse of power is far from insignificant' ... A police officer 'possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal

> freedoms, not to mention bodily injury and financial loss.'

*Id*. at 299-300 (citations omitted; emphasis added).

In this case, just as in *POST*, the Federal Government's assertion that wearing masks and concealing identities is necessary to prevent "doxxing" of ICE agents and to ensure their safety "is purely speculative." *Id.* at 302. It is undermined by the facts that: (1) no federal statute, regulation, or policy mandates the wearing of masks or concealment of identities; (2) until last year, ICE agents and other federal law enforcement officers had very rarely, if ever, worn masks or concealed their identities when performing their duties (except when necessary, such as undercover operations); and (3) historically, federal, state, and local law enforcement officers around the country have not worn masks or concealed their identities. In *Urquilla-Ramos v. Trump*, the court expressly rejected ICE's argument that masking is necessary for agents' safety - "A mask does not stop a bullet. It does not deflect a blow. It provides no physical protection that the tactical equipment these officers already carry does not provide." 821 F. Supp. 3d at 628.

In sum, the *discretionary* practice by some ICE agents to wear masks and conceal their identities is not necessary to protect them from "doxxing", nor is it needed to perform their duties. Speculation about the purported need for this practice is in any event far outweighed by the greatly increased potential it creates for abusive and violent conduct by the officers. Indeed, at least 22 people have

been shot by federal immigration agents since last January, six of whom have died.[1] This represents a significant increase from the number of shootings in prior years.[2]

B. Prohibiting Masks and Requiring Identification Promote The Safety of Officers and the Public and Enhance Accountability

ICE officials who have served in different Administrations have pointed out that ICE agents historically have not worn masks. In an interview last October, Todd Lyons, the former Acting Director of ICE from March 2025 until May 2026, acknowledged that "I've made it known that I'm not a fan of the masks, right? Because if you look at the last administration, even after January 20 [2025], *up until February, ICE officers and agents didn't wear masks*."[3] John Sandweg, a former Acting Director of ICE from 2013-2014 and former Acting General

---

1 Madeleine Ngo, Hamed Aleaziz, Zolan Kanno-Youngs, "ICE Ordered to Cease Most Vehicle Stops After 2 Killings in a Week," New York Times, July 14, 2026 https://www.nytimes.com/2026/07/14/us/ice-agents-traffic-stops.html

2 Allison McCann, "At Least 21 People Have Been Shot by Federal Immigration Agents Since Last Year," New York Times, July 10, 2026, https://www.nytimes.com/2026/07/08/us/immigration-agent-shootings-vehicles.html

3 Ali Bradley, "Exclusive: Acting ICE director defends agents' use of masks," News Nation, Oct. 16, 2025, https://www.newsnationnow.com/us-news/immigration/todd-lyons-defends-masked-agents/ (emphasis added).

Counsel of DHS, participated in dozens of "ride-alongs" with ICE agents during his tenure, and said that "I never saw anyone wearing a mask."[4]

In *Doornbos v. City of Chicago*, 868 F.3d 572, 583 (7th Cir. 2017), the Court emphasized that "it is generally not reasonable for a plainclothes officer to fail to identify himself when conducting a stop." The Court stressed "the dangers of this tactic by plainclothes officers, which creates a serious risk that a civilian would 'think that he was being attacked by common criminals and … *this would make him more likely to resist*." *Id*. at 584 (emphasis in original). It stated that "[t]he tactic provokes panic and hostility from confused civilians who have no way of knowing that the stranger who seeks to detain them is an officer," and "[a] fight-or-flight reaction is both understandable and foreseeable." *Id.* The Court explained as follows:

> 'Self-defense is a basic right' … and many civilians who would peaceably comply with a police officer's order will understandably be ready to resist or flee when accosted – let alone grabbed – by an unidentified person who is not in a police officer's uniform.

*Id*. at 584-85 (citations omitted).

Similarly, in *Urquilla-Ramos v. Trump*, the court recently declared that when ICE officers "are faceless and nameless," this "poses a serious public safety

---

4 Ray Sanchez and Alisha Ebrahimji, "Masked ICE officers: The new calling card of the Trump Administration's immigration crackdown," CNN, June 21, 2025, https://www.cnn.com/us/ice-immigration-officers-face-masks.

risk, endangers personal security, and increases the danger of law enforcement work – because the public cannot distinguish officials from imposters. Individuals understandably refuse to cooperate when they cannot tell the difference between a government agent and a criminal actor." 821 F.Supp.3d at 625. The court also noted the "practical danger" created by anonymous law enforcement officers – "[w]hen masked individuals in unmarked vehicles seize someone on the highway, nothing visible distinguishes lawful enforcement from kidnapping." *Id*. at 624. It concluded that "Fourth Amendment law is premised on a very basic assumption: that individuals know they are dealing with a legitimate law enforcement officer acting under the color of law when they are being seized." *Id*. at 623.

Under DHS regulations, immigration officers making an arrest must identify themselves "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii)(A). Also, in the aftermath of misconduct by some unidentified National Guard troops who responded to protests of the killing of George Floyd, Congress enacted legislation requiring federal law enforcement personnel or members of the National Guard who respond to a civil disturbance to "visibly display" their "name or other individual identifier" and the name of their agency. 10 U.S.C. § 723(a).

Certain fundamental traditions of policing in the United States are widely accepted. Among these traditions, police are distinguished from civilians or other

government officials by their identification badge, uniform, and weapon. Police are public officials and are accountable to the public, and they do not operate in secret or clandestine ways, except when necessary for tactical purposes. By contrast, it is commonplace in countries governed by authoritarian and undemocratic regimes to utilize masked, anonymous "secret" police and militaries to suppress dissent, instill fear, and protect the regime.

The Federal Government's support for masking of federal law enforcement agents stands in stark contrast to President Trump's vigorous opposition to masking by protesters. On June 8, 2025, after federal immigration raids sparked protests in Los Angeles and the deployment of the National Guard, President Trump made the following post on Truth Social:

> MASKS WILL NOT BE ALLOWED to be worn at protests. What do these people have to hide, and why???[5]

The next day, he followed up with another post: "ARREST THE PEOPLE IN FACE MASKS, NOW"![6] The logic that prohibiting protesters from wearing masks will deter them from violating the law and allow lawbreakers to be identified applies equally to mask-wearing by ICE agents, who are armed and have repeatedly exercised deadly force during the past year.

---

5 https://truthsocial.com/@realDonaldTrump/posts/114646378582957392.

6 https://truthsocial.com/@realDonaldTrump/posts/114651482271002772.

Federal, state, and local law enforcement officers in Virginia and throughout the country have long performed their duties without masks and while wearing uniforms and badges that identify themselves. This transparency is vital to establishing and maintaining public trust in law enforcement. Clear identification of officers during law enforcement activities assures the public that their actions will be subject to accountability. Masking by agents or concealment of their identities during law enforcement creates an atmosphere of secrecy that undermines trust. When law enforcement officers conceal their identities, it invites suspicion, fear, and doubt among the community. It increases the risk of misconduct or abuse of authority, as masked agents often feel less accountable for their actions.

When law enforcement agents wear masks and conceal their identities, it is far easier for them to avoid a *Bivens* action for civil liability and internal agency discipline for the use of excessive force or other misconduct. It also makes it much more difficult to establish a Federal Tort Claims Act claim against the federal government based on an agent's misconduct and to conduct discovery in such a case. Masking and identity concealment prevents accountability, emboldens officers to engage in misconduct, and precludes injured citizens from obtaining redress.

The need for accountability by ICE agents was recently emphasized by the court in *Urquilla-Ramos v. Trump*, which was a habeas corpus action arising from

an arrest of an immigrant by a group of "unidentifiable, masked officers" from ICE. 821 F.Supp.3d at 614. The court stated:

> The ability to seek redress is inseparable from the right to be secure. One's right to be secure in their person protects not only against interference but also ensures the practical ability to challenge unlawful intrusion. When officers can conceal their identity, the system effectively collapses. Individuals lack the information necessary to report misconduct for meaningful judicial review or internal investigation.[7] Officers are thereby emboldened to exercise their power in an arbitrary and oppressive manner. And public trust is decimated.
>
> * * *
>
> A mask does one thing: it hides the face of the officer wearing it ... And preventing identification serves only to eliminate accountability. A law enforcement practice whose sole operational effect is the elimination of accountability is not a safety measure. It is a constitutional deficiency wearing the name of one.

821 F.Supp.3d at 623-24, 628.

---

[7] The court explained as follows:

> The Petitioner cannot identify the agents who seized him. He knows the seizure occurred at a particular place and time, but he cannot name the individuals, attribute their conduct, or identify who used force, who made statements, or who violated what procedure. The seizure is functionally unanswerable. That is not a procedural gap. It is the elimination of constitutional accountability itself.

821 F.Supp.3d at 629.

Anonymity imbues law enforcement agents with a sense of impunity and thus makes misconduct by them far more likely. The Virginia Legislature recognized that the Mask Law and Identification Law are in the public interest, as they promote transparency and accountability, increase the safety of both the public and law enforcement officers, and help foster trust between the public and law enforcement officers.

### C. Masking and Identity Concealment Create Intimidation and Fear In The Community and Chill the Exercise of First Amendment Rights

The use of secret police to intimidate and suppress dissent is a hallmark of an authoritarian regime. As shown repeatedly on television, masked ICE agents shot and killed Renée Good and Alex Pretti, who were merely exercising their First Amendment rights to protest ICE's conduct. Allowing law enforcement agents to wear masks and conceal their identities creates an atmosphere of fear and chills free speech. It also impedes the ability of the press to identify and report on law enforcement agents who engage in misconduct, violate constitutional rights, and abuse the great power they possess.

Several recent decisions by federal district courts have emphasized the fear that is instilled in the public by masked ICE agents. In *American Association of University Professors v. Rubio*, 802 F.Supp.3d 120, 162 n. 29, 174 (D. Mass. 2025), the court stated as follows:

> [I]mages of plain-clothed, masked federal agents- faceless agents of the federal government – snatching a non-violent person off the streets of Boston has caused fear in citizens and non-citizens alike.
>
> *　　*　　*
>
> ICE goes masked for a single reason – to terrorize Americans into quiescence. Small wonder ICE often seems to need our respected military to guard them as they go about implementing our immigration laws. It should be noted that our troops do not ordinarily wear masks. Can you imagine a masked marine? It is a matter of honor – and honor still matters. To us, masks are associated with cowardly desperados and the despised Ku Klux Klan. In all our history we have never tolerated an armed masked secret police. Carrying on in this fashion, ICE brings indelible obloquy to this administration and everyone who works in it.

The foregoing opinion was quoted with approval in *Molina v. United States Dept of Homeland Sec.*, 811 F.Supp.3d 1, 64 (D.D.C. 2025), where the court stressed the importance of "transparency" when ICE agents make arrests. It declared that just as masking by agents "terrorize[s] Americans into quiescence," "[t]he same is true of agents making arrests without identifying themselves." *Id.*

In *Urquilla-Ramos v. Trump*, the court declared as follows:

> The Founders recognized that freedom is imperiled not only when government actions lack legal justification, but also when those actions are carried out by agents whose authority is unchecked and whose actions cannot be traced…Masking and anonymization of officers, therefore, are fundamentally inconsistent with the historical understanding of the Fourth Amendment.
>
> *　　*　　*

> When officers can wear a mask, fail to verify their credentials, refuse to disclose their name, arrive in an unmarked vehicle, and neglect to provide a justification for their seizure of an individual, the constitutional protection that the Framers envisioned has not just been corroded—it has been eviscerated.
>
> *   *   *
>
> These incidents [involving masked, unidentified ICE agents] have generated widespread fear within immigrant communities, affecting routine activities such as sending children to school, grocery  shopping, and attending recreational events.
>
> *   *   *
>
> This is not an undercover operation. No specific danger has been identified that required these agents to be masked for this arrest. This is a deliberate choice to conduct routine civil immigration enforcement through masked anonymous agents operating without warrants across the interior of the United States. When concealment becomes policy rather than exception, the government has not invoked an exigency. It has abolished the rule that exigency was meant to qualify.

821 F.Supp.3d at 623-625, 628.

In *M-J-M-A- v. Hermosillo*, 822 F.Supp.3d 1147, 1183-84 (D. Or. 2026), the court stated:

> ICE's arrest tactics are violent and brutal and intended to strike fear across the putative class and communities in Oregon … Due process requires those with great power to exercise great restraint, and the record demonstrates that Defendants have profoundly failed in that obligation.
>
> *   *   *

> Significant portions of our Oregon community are living each day with anxiety and fear of opening their front door, shopping for groceries, or attending school, due in significant part to Defendants' unlawful practices.

The wearing of masks and failure to wear identification badges make it more likely that agents will engage in unconstitutional conduct, while at the same time making it less likely that those opposed to the Administration's policies will feel free to exercise their own constitutional right to engage in peaceful protest. In *American Association of University Professors*, the court rejected the Federal Government's motion to dismiss the plaintiffs' First Amendment claim, finding that the defendants had intentionally sought "to chill the rights to freedom of speech and peacefully to assemble" of college students who were protesting the Administration's policies. 802 F.Supp.3d at 131. The court found that the chilling of speech was accomplished "not just by means of the threatening statements [by defendants' agents] and speech-targeted arrests," "but *also by the manner in which these arrests, detentions, and revocations have been conducted: by often-masked agents…*" *Id.* at 190 (emphasis added). *Accord American Association of University Professors v. Rubio*, 780 F.Supp.3d 350, 383 (D. Mass. 2025) (plaintiffs adequately alleged chilling of speech in violation of First Amendment based on "arrests at one's home or on the street by masked officers. It is hard to imagine a policy more focused on intimidating its targets from practicing protected political speech.") (emphasis added). *See also Aja v. City of Riverside*, 2025 U.S. Dist.

LEXIS 157015, at *21 (C.D. Cal. Aug. 11, 2025) ("a police officer violates a person's First Amendment rights if his actions 'would chill or silence a person of ordinary firmness from future First Amendment activities'"); *Anti Police-Terror Project v. City of Oakland*, 477 F.Supp.3d 1066, 1088 (N.D. Cal. 2020) (tactics used by police in responding to protests of killing of George Floyd "had a chilling effect on the political speech of the protesters and likely deterred some of them from engaging in further protests"); *Black Lives Matter Seattle-King Cty. v. City of Seattle*, 466 F.Supp.3d 1206, 1213 (W.D. Wash. 2020) (actions of Seattle Police Department in response to protests of killing of George Floyd "would chill a person of ordinary firmness from continuing to protest").

### D. Masking and Identification Concealment By ICE Agents Have Facilitated Crimes by ICE Impersonators

As noted in *Urquilla-Ramos v. Trump*, masking and identification concealment by ICE agents have led to impersonations of ICE agents by many criminals around the country. 821 F.Supp.3d at 624 and n. 26. The court stressed that masking by ICE agents "invites impersonation," and "when officers are faceless and nameless, others can exploit that anonymity for personal gain or criminal acts." *Id*. at 625.

On October 17, 2025, the FBI disseminated a Public Safety Awareness Report entitled, "Criminal Actors Impersonate ICE Agents to Commit Violent

Crime."[8] In that Report, the FBI informed "state, local, and federal law enforcement (LE) partners about criminal actors impersonating ICE agents to commit violent crime." It stated that "[t]hese criminal impersonations make it difficult for the community to distinguish between legitimate officers conducting lawful law enforcement action and imposters engaging in criminal activity, which damages trust between the local community and law enforcement officers."

The Report identified a number of instances where such impersonations had taken place. To combat the ICE impersonation schemes, the FBI urged that "law enforcement personnel adequately identify themselves during operations and cooperate with individuals who request further verification."[9]

---

8 https://s3.documentcloud.org/documents/26364028/20251016-fbi-alert-re-ice-impersonators.pdf

9 Many articles have been written about masked criminals around the country impersonating ICE officers. *See, e.g., Urquilla-Ramos v. Trump*, 821 F.Supp.3d at 624 n. 26; Anagilmara Vílchez and Ronny Rojas, "Fake ICE agents terrorize immigrants amid Trump's crackdown," NBC News, May 25, 2026, https://www.nbcnews.com/news/us-news/ice-impersonators-immigrants-raids-violence-trump-administration-rcna265653; Allison Gordon, Rob Kuznia, Kyung Lah, CNN, "ICE impersonator incidents rise during Trump's second term," Nov. 20,2025, https://www.cnn.com/2025/10/02/us/ice-impersonator-incidents-rise-invs-vis; Lisa Desjardins and Andrew Corkery, "Rise of ICE agents wearing masks creates opportunity for imposters to conduct crimes," PBS News Hour, July 27, 2025, https://www.pbs.org/newshour/show/rise-of-ice-agents-wearing-masks-creates-opportunity-for-imposters-to-conduct-crimes; Zak Cheney-Rice, "No One Can Tell Who's a Cop Anymore. Masked criminals are impersonating ICE agents and police, preying on an already terrorized public," New York Magazine, July 28, 2025,

One month after the FBI Report, the U.S. Marshals Service issued a press release entitled "Real Officers Have Nothing to Hide: If In Doubt, Ask to Verify."[10] Under the heading "Proper Identification," it stressed that "[r]eal officers will identify themselves [and] state their agency."[11] It noted that such identification by officers helps "to ensure accountability and build safer communities through transparency…"[12]

The disturbing reality that masked criminals have impersonated ICE agents provides yet additional support for the Virginia Legislature's conclusion that the Mask Law and Identification Law are in the public interest.

---

https://nymag.com/intelligencer/article/trump-immigration-ice-agents-masks-criminal-imposters.html.

10 https://www.usmarshals.gov/news/press-release/real-officers-have-nothing-hide-if-doubt-ask-verify#:~:text=ensure%20accountability%20and%20build%20safer,are%20currently %20operating%20in%20Memphis.

11 *Id.*

12 *Id.*

## IV. CONCLUSION

For the reasons set forth above and in the Virginia appellants' brief, CREW respectfully submits that the district court's preliminary injunction order should be reversed.

Respectfully submitted,

/s/ Burt M. Rublin
Burt M. Rublin
Counsel of Record
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Phone: (215) 864-8116
rublin@ballardspahr.com

Nikhel S. Sus
Lauren C. Bingham
**CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**
P.O. Box 14596
Washington, DC 20044
Phone: (202) 408-5565
nsus@citizensforethics.org
lbingham@citizensforethics.org

*Attorneys for Amicus Curiae Citizens for Responsibility and Ethics in Washington*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. 29(a) because it contains 4,037 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman 14-point font.

August 20, 2026

*/s/ Burt M. Rublin*
Burt M. Rublin

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, the foregoing brief was served on all parties or their counsel of record through the CM/ECF system.

August 20, 2026

*<u>/s/ Burt M. Rublin</u>*
Burt M. Rublin